Mitchell *vs.* Mitchell, et al.

IN THE MATTER OF THE PETITION OF SARAH E. MITCHELL.

MESNE PROFITS: RELIEF IN EQUITY, AFTER SUIT AT LAW.—A party who after a recovery in ejectment elects to proceed at law to recover the *mesne profits*, and fails to recover a part because barred by limitations, is not entitled to relief in equity, as to the part so barred in the action at law.

APPEAL from the Circuit Court for Charles County:

The petitioner was the appellant in the case of *Mitchell vs. Mitchell,* (reported *ante p.* 244, &c.;) and after the decree of affirmance passed in that case, she filed this petition, asking that the decree might be rescinded and the cause remanded, in order that an account might be taken of the rents and profits of the *Myrtle Grove* estate. The petitioner had recovered that estate in an action of ejectment, and had sued Henry S. Mitchell, one of the present defendants, for the recovery of the *mesne* profits in an action at law, but was defeated in part by the interposition of the Statute of Limitations. The main object of this petition was to recover so much of said *mesne* profits as she had failed to recover in the action at law.

The matter of this petition was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

74　　v. 21

*Henry May* and *Robert J. Brent,* for the petition :

The answer of Henry S. Mitchell sets up the defence for his children, (the devisees of Hunting Field,) that by the descent of Myrtle Grove on the complainant, the whole charge on Hunting Field was extinguished. It does not raise the question that Myrtle Grove ought to be marshalled, and subjected primarily to the payment of this common burden, but we contend that while there is no error in the decree of this Court, so marshalling Myrtle Grove, that an account ought to be taken as specially prayed in the bill, and as covered by the prayer for general relief. We maintain that the account is necessary with a view to marshalling assets. The charge is expressly placed on all his lands by the testator. But in equity the devisee has a right to claim that the descended estate shall be first marshalled, to exonerate his own estate from the charge. 1 *Story's Eq.*, secs. 558, 559, 577. *Adams' Eq.*, sec. 267, side page. *Galton vs. Hancock*, 2 *Atkins.*, 434, 435.

In marshalling assets, he who asks equity must do equity. 1 *Story's Eq.*, secs. 557, 564. He who asks equity must do equity, even to the extent of paying the other party what he owes on other accounts. *Com. Dig. Chancery*, 3 *F.*, 3. 1 *Story's Eq.*, sec. 64, e. and note 2. 5 *Mylne & Craig*, 97. The complainant's right to the annuity as charged on the real estate, was a purely equitable title, and, as such, no limitations could bar it, because no action at law would have been allowed for the annuity. *Allender vs. Vestry of Trinity Church*, 3 *Gill*, 169. *Kane vs. Bloodgood*, 7 *Johns. Ch. Rep.*, 90. It may be said that as the right of Miss Mitchell, *qua* owner of Myrtle Grove, to recover her rents and profits is barred at law, so equity will regard them as barred. Our answer is, first, that the debt remains though the remedy is barred. *Oliver vs. Gray*, 1 *H. & G.*, 215. And a Court of Equity will require, as a condition to its doing equity, that a debt barred by limitations shall be paid, and in fact it often requires the statute of limitations to be put out of the way at law. 2 *Story's Eq.*, sec. 1521.

*Bond vs. Hopkins*, 1 *Sch. & Lef.*, 431, 434. Even in cases where a new trial at law is asked, the Court, in the exercise of its discretion, will impose terms on the party asking it, and require that he shall consent to a change of the form of the action, or do any other act necessary to a new trial on the merits of the controversy. 1 *Waterman's, Graham on New Trials*, 604. *Keate vs. Temple*, 1 *B. & P.*, 158. 2 *Tidd's Prac.*, 516. *Walker vs. Long*, 2 *Browne's Rep.*, 125. *Welsh vs. Durcer*, 3 *Binney*, 329.

The counter-claim now interposed is connected with and arises from the matters now in issue. It rather belongs to the doctrine of *recoupment* than the head of *set-off*. Even at law a recoupment of damages, springing out of the plaintiff's cause of action, will be allowed to the defendant without a plea or notice of set-off. 2 *Parson's Cont.*, 246. *Deming vs. Kemp*, 4 *Sandf.*, 147. *Van Buren vs. Digges*, 11 *How.*, 475. *Abbott vs. Gatch*, 13 *Md. Rep.*, 314. If Henry S. Mitchell and his children occupied the Myrtle Grove estate as naked trespassers, and, as such, withheld its issues and profits from being applied to the payment of that annuity to which it was primarily liable, the principle is, that in trespass all are principals, and the liability cannot be shifted from any one of the co-trespassers. Nor is this principle qualified by the fact that some of the trespassers are infants. Infancy is a shield, and not a weapon of offence. *Vasse vs. Smith*, 6 *Cranch*, 231. *McPherson on Infants*, 481, side page. If an infant has tortiously appropriated our property, he cannot ask equity against us without making reparation, any more than an adult can. *Bristow, et al., vs. Eastman*, 1 *Esp. Rep.*, 173. An infant is liable in trespass for *mesne* profits of lands. *Latch. Ca.*, 21. *Sir W. Jones' Rep.*, 156.

But suppose we are wrong in this, and the infants cannot be held to indemnity, Henry S. Mitchell is clearly liable to account to us by reason of his receipt of the rents and profits of Myrtle Grove, and he being a party properly in this cause, because as administrator it was necessary that

he should account for the personal estate; the Court have a clear jurisdiction to make him account, by a *quasi* decree over against him, for such portions of the primary estate as he has diverted from the payment of the complainant's annuity.

Conceding that the devisees of Hunting Field have an equity against Myrtle Grove, which requires that it should be primarily applied to exonerate the Hunting Field estate, has not the owner of the primary estate a right to claim a decree over against one of the parties to the cause, who has wrongfully appropriated the income of the primary estate to his own use? In settling equities between parties, it is a familiar doctrine of equity, while subjecting one party to loss, to decree indemnity in his favor against another party to the cause, who is ultimately liable to make good the primary liability.

*Wm. Schley,* against the petition:

1. Even if there had been no rents and profits from Myrtle Grove, the *corpus* would have sold for enough to pay the arrears of annuity; and, if it had sold for its value, would have left a surplus of $10,000: a capital, the mere interest of which would have been more than sufficient to pay all subsequently accruing annuities.

2. But Myrtle Grove was yielding rents and profits, so far as we have any information, quite sufficient to have kept down the annuity, without looking, at all, to the *corpus.*

3. It was the clear right of the annuitant, when the first annuity was left unpaid, to have resorted, at once, to the estate, and, thereout to have obtained satisfaction, even by sale, if that were necessary. She had no right to suffer the annuity to accumulate, at the expense of the Hunting Field estate. Even if another received the rents and profits, pending the litigation, and such rents and profits were, in consequence thereof, lost to the complainant, as owner of the estate, she could not, as such owner, by presenting

herself in the attitude of annuitant, shift the charge from Myrtle Grove to Hunting Field, so as to throw the loss upon the owners of Hunting Field, instead of bearing it herself, as owner of Myrtle Grove.

4. But the briefs, filed in the case, shew, that she sued for *mense* profits, and recovered; and although she was barred, as to a part of the time, by limitations, yet that was not brought about by any act or default of the owner of Hunting Field. The rents and profits had accrued, and were received; but were lost to her, by her own *laches*. In cases of auxiliary assets, (and the rule must be the same in all cases, of secondary liability,) the loss or diminution of the fund, first liable, does not enlarge the liability of the fund, which is liable only in aid of the first. *Anon.*, 1 *Salk.*, 132.

5. But the record further shews, that the appellant sold Myrtle Grove in July 1856, for $10,000. This was sufficient, of itself, even if this had been its full value, to have produced an annual income, more than sufficient to keep down the annuity.

6. In that sale she released Myrtle Grove from the lien of her annuity. That deed was executed, no doubt, upon the assumption, that both estates were contributory, (Myrtle Grove and Hunting field,) not upon the theory, that Myrtle Grove was primarily liable. How then, when the primary liability is established, can she go against the other estate, when she has no right to look to Hunting Field, without first exhausting Myrtle Grove? It would be like attempting to release the principal, and yet hold the security liable.

7. But I deny, that even as against Henry S. Mitchell, the complainant can, in this suit, have an account as against him. As recipient of any of the rents and profits of Myrtle Grove, he is liable to her, as owner of that estate; not as annuitant. Her remedy is properly at law, in an action of trespass for *mense* profits. She pursued that remedy, and recovered rents and profits to the extent of

her legal rights. If, by her *laches*, she lost a portion of the rents, which might have been recovered if she had exercised diligence, it is her misfortune. It cannot be a ground for relief in equity. And even if originally, she might have gone into equity for an account; yet she effectually, and forever, waived that right by electing to sue at law.

8. The bill in this case was to charge the Hunting Field estate with its supposed *pro rata* liability to contribute to the payment of the annuity. But the pleader rightly supposed, that the gross amount, claimed as due, was to be reduced, by a credit of rents and profits of the Myrtle Grove estate, in reduction of the contributive share of that estate; and hence an account was prayed of such rents and profits as ancillary to a decree for the sale, if necessary, of both estates.

9. And, lastly, whatever remedy, if any, the complainant might have as to any annuity, since the exhibition of said bill, it is clear that the same cannot be recovered in this suit. It is not embraced in the controversy. She may have had possession (and probably had possession) until the sale to the trustees of Mrs. Key. At all events, that sale produced enough, and more than enough, to pay all that was claimed, as due, in this suit.

It is, therefore, respectfully insisted, that the decree shall not be opened; but that the petition shall be dismissed, with costs.

GOLDSBOROUGH, J., delivered the opinion of this Court:

We have carefully considered the application set forth in the above petition, in which the petitioner prays that the decree of affirmance passed by this Court at the present term in the case of *Sarah E. Mitchell vs. Henry S. Mitchell & others*, may be rescinded, and the cause remanded for the purposes stated in said petition.

We find no sufficient cause assigned to justify us in disturbing the decree.

It appearing from the record in the cause in which the

decree was passed, that the annuity bequeathed to the petitioner had been paid to the period when "Myrtle Grove" devolved on her by descent, from that time this estate became primarily liable for the payment of the charge. But by the union thereof with the estate in the petitioner, the annuity was extinguished and "Hunting Fields" absolved from all liability for contribution. This exemption is manifest, because by the conceded valuation of "Myrtle Grove," the interest on that valuation is more than sufficient to extinguish the annuity.

The rents and profits of "Myrtle Grove" sought to be obtained through the bill of complaint and this petition, arose out of the estate after the legal title thereto had devolved upon the petitioner. They were received by Henry S. Mitchell while he was in adversary possession of the property.

The petitioner having recovered "Myrtle Grove" in an action of ejectment, sued at law for these rents and profits as mense profits, and it was her misfortune if they could not all be recovered because of the interposition of the plea of the statute of limitations.

The petitioner having thus elected to proceed at law, this Court as a Court of Equity cannot afford her the relief sought by her petition.

*Petition Dismissed.*

(Decided June 3rd, 1864.)